|  |  |
|---|---|
| ERIC EDMISTON, a single man, in his individual capacity and as guardian of A.E., and A.E., a minor,<br><br>Plaintiffs,<br><br>v.<br><br>STATE OF WASHINGTON, STATE OF WASHINGTON DEPARTMENT OF SOCIAL AND HEALTH SERVICES, CHILD PROTECTIVE SERVICES, a state and government and its division and agency, DIVISION OF CHILDREN AND FAMILY SERVICES, MAUREEN MARTIN, LARRY HAYDEN, KAREN KREMKAU,<br><br>Defendants. | CASE NO. C07-5379RJB<br><br>**ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT, and SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT** |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

This matter comes before the Court on Defendants' Motion for Partial Summary Judgment (Dkt. 51), Defendants' Motion to Strike (Dkt. 84), and Defendants' Second Motion for Partial Summary Judgment (Dkt. 68). The Court has reviewed the pleadings filed in favor of and in opposition to these motions, has reviewed the file, and is fully advised.

### I. FACTS

The events giving rise to this case began on December 8, 2003, when Plaintiff Eric Edmiston contacted the Washington Department of Social and Health Services ("DSHS") Child Protective Services ("CPS") regarding A.E., his son. Dkt. 57, at 2. A.E. was then around one

ORDER
Page 1

1  month old at the time. Dkt. 58, at 29. The intake worker for the referral was Defendant Maureen
2  Martin, a CPS supervisor. Dkt. 57, at 1. Plaintiff complained of A.E.'s mother's, Marcie
3  Ramsey's, use of alcohol. *Id.*, at 2. At the time of the referral, Plaintiff stated that neither he nor
4  Ms. Ramsey were fit to be parents. *Id.* CPS social worker Paul Martin investigated the referral.
5  Dkt. 58, at 2. He stated he found A.E. "healthy, safe, clean, and content" in Ms. Ramsey's care.
6  *Id.* Mr. Martin is not a defendant in this action. He was the assigned social worker to this case
7  from December 2003 to October 2004. *Id.* His supervisor, Maureen Martin, however, is a
8  defendant.

9        Ms. Ramsey was well known to the Department as a late stage alcoholic. Dkt. 83, at 136.
10 The record indicates that Ms. Ramsey had an older daughter who was placed into a permanent
11 guardianship due to Ms. Ramsey's inability to care for her. *Id.*

12       The second referral concerning A.E. was on June 8, 2004. Dkt. 57, at 2. The referent
13 was again Plaintiff. *Id.* He expressed concerns about Ms. Ramsey's drinking and mental health.
14 *Id.* Plaintiff reported that the baby was healthy and doing great, so no investigation was
15 conducted. *Id.*

16       Around this time, Ms. Ramsey obtained a Protective Order preventing Plaintiff from
17 having contact with her. Dkt. 90, at 8. At the hearing, Plaintiff sought custody of A.E., and
18 brought his sister, Sue Baker to the hearing, and told the Court that his sister would provide care
19 for A.E. while he was at work. *Id.* Plaintiff was given temporary custody, and Ms. Baker did
20 care for A.E. for a day. *Id.* Plaintiff states that when he went to pick A.E. up, Ms. Ramsey was
21 with Ms. Baker, and they started "screaming and yelling." *Id.*

22       On June 10, 2004, another CPS referral involving A.E. was made by Ms. Baker. Dkt. 58,
23 at 3. She reported that Mr. Edmiston had been in an angry rage in front of the baby. *Id.* This
24 referral was investigated by Mr. Martin, and was closed. *Id.*

25       Plaintiff acknowledges that he contacted Ms. Ramsey for the return of some of her
26 furniture after the protective order was issued. Dkt. 90, at 1. He states that Ms. Baker called the
27 police and reported him. *Id.*, at 1-2.

28

ORDER
Page 2

1    On June 13, 2004, a CPS referral was made by Port Angeles law enforcement officer Rik
2 Scairpon. Dkt. 58, at 3. He indicated that he was taking Plaintiff Edmiston into custody for
3 violating the protective order. *Id*. Officer Scairpon was concerned that he would have to take
4 A.E. into protective custody because Ms. Ramsey had an outstanding arrest warrant for DUI,
5 temporary custody had been given to Plaintiff, and Plaintiff refused to allow A.E. to be placed
6 with his sister, Ms. Baker. *Id*. Officer Scairpon did eventually decide to take A.E. into protective
7 custody. *Id*. CPS social worker Andrade took physical custody of A.E. and placed him into an
8 emergency receiving care placement with licensed foster parent Jessica Baccus. *Id*.
9    On June 14, 2005, a hearing was held regarding Plaintiff's alleged violation of the
10 protective order. Dkt. 90. At the hearing, social worker Paul Martin and Defendant social
11 worker Larry Haden advised the Court of DSHS's intention to initiate dependency proceedings.
12 *Id.*
13    On June 15, 2004, social worker Paul Martin filed a Dependency Petition with the Clallam
14 County, Washington Superior Court, cause number 04-7-00331-9. Dkt. 58, at 3. A contested
15 Shelter Care hearing was held on June 17, 2004, and the Court ordered A.E. into shelter care. *Id*.
16 Plaintiff was ordered to provide immediate Urinary Analyses ("UAs"). *Id*., at 4. He tested
17 positive for THC on two consecutive occasions in June of 2004, with the second test showing less
18 drug present than the first. Court ordered services for Plaintiff included random UAs, parenting
19 classes, and an anger management evaluation. Dkt. 58, at 4.
20    On June 17, 2004, A.E. was transferred from the receiving home to foster parent Tawnya
21 Gagnon's home, where he stayed until September 3, 2004. Dkt. 58, at 4.
22    Plaintiff states that during one of A.E.'s earliest placements, (although he fails to identify
23 which placement or precisely when), during a supervised visit, he noticed A.E. had a dirty diaper,
24 and feces running up his back. Dkt. 90, at 2. Plaintiff states that he also noticed what appeared
25 to be bite marks around A.E.'s penis. *Id*.
26    Plaintiff participated in a chemical dependency evaluation. Dkt 58, at 9. In the
27 evaluator's June 25, 2004 report, Plaintiff admitted that his last use of alcohol and marijuana was
28

June 4, 2004, and last use of cocaine was September 5, 2001. Dkt. 58, at 9. The evaluator raised concerns that Plaintiff had relapsed. *Id*. at 10. The report was sent to DSHS. Dkt. 58, at 4.

On June 30, 2004, a court ordered case conference was held. Dkt. 57, at 2. Plaintiff and his attorney waived attendance. *Id*. At the conference, Ms. Ramsey agreed to in-patient treatment at Genesis House in Seattle, a rehabilitation center which accepts infants. *Id*. The conference made a recommendation to the Superior Court that Ms. Ramsey enter Genesis House and A.E. join her after 30 days. Dkt. 58, at 4.

Ms. Ramsey entered Genesis House in early July 2004. Dkt. 58, at 4. Plaintiff states that he had difficulty visiting his son during this period because of the distance from Port Angeles, Washington to Seattle. Dkt. 90, at 2.

Plaintiff participated in an anger management evaluation. Dkt. 58, at 27. The evaluator found that most of his responses were well under the "problem" range, but that "control" and "violence" response patterns were high. *Id*. The report was received at DSHS. Dkt. 58, at 5.

On August 24 and 25, 2004, a Fact Finding Hearing was held regarding the Dependency Petition. Dkt. 58, at 29. Ms. Ramsey did not contest the dependency. *Id*. Plaintiff did contest the dependency. *Id*.

On August 27, 2004, the Court issued it's decision. *Id*. The Court found that Ms. Ramsey was A.E.'s primary caregiver. *Id*. The Court acknowledged that Plaintiff wanted custody of his son. *Id*. It found, though, that he was not an experienced parent and there was a "plethora of evidence tying Mr. Edmiston to cocaine use that resulted in his admittance to the Drug Court Program." *Id.*, at 30. The Court noted that, at the Fact Finding Hearing, Mr. Edmiston testified that he was using marijuana and alcohol "at times." *Id.* The Court expressed concerns about the potential for relapse and about Mr. Edmiston's ability to learn parenting skills due to his self reported substance abuse. *Id*. The Court found that Mr. Edmiston had domestic violence and anger control problems. *Id*. It found that there was evidence in the record that "his angry appearing raging behavior" places "professionals in fear of him." *Id*. It found that he appeared proud of his angry outbursts and confrontations. *Id*. The Court held that "the lack of

parenting ability, when combined with substance abuse and domestic violence issues [were] sufficient for the Court to find by a preponderance of the evidence that A.E. [was] a dependant child." Dkt. 58, at 31.

After a hearing, the Superior Court ordered A.E. be taken to his mother at Genesis House on September 2, 2004. Dkt. 58, at 33. The Court placed conditions on Ms. Ramsey, including: complying with her treatment plan at Genesis House, getting a psychiatric evaluation, enrolling in a domestic violence victim's group, and participating in Alcoholics Anonymous. Dkt. 58, at 36.

In late August 2004, the charges that Plaintiff violated the June 2004 protective order were dismissed without prejudice due to the victim's unavailability. Dkt. 90, at 8. The Court was informed that Ms. Ramsey (the victim) was at Genesis House. *Id.*

Ms. Ramsey abruptly left Genesis House on October 4, 2004. Dkt. 58, at 5. A.E. was returned to Port Angeles and placed with foster parent Dorothy Steffan. *Id.* Ms. Ramsey immediately entered a non-resident substance abuse treatment program in Port Angeles. *Id.*, at 6.

Plaintiff states that during A.E.'s stay with the Steffans, he noticed the baby had terrible separation anxiety. Dkt. 90, at 2. Due to the Steffans' work schedule, A.E. would not get to bed until around 10:00 P.M. Dkt. 83, at 61.

On October 7, 2004, the Superior Court ordered that A.E. would no longer be placed with Ms. Ramsey, and she and Plaintiff would get two hour twice weekly supervised visitation. Dkt. 58, at 39. A Permanency Planning Review Hearing was held on October 21, 2004. Dkt. 58, at 6.

In early November of 2004, A.E.'s dependency case was transferred from CPS to Child Welfare Services ("CWS"). Dkt. 55, at 2. The CWS social worker, Larry Haden, assigned to the case from November 2004 to April of 2005, and his supervisor, Karen Kremkau are named Defendants. *Id.*

On November 16, 2004, Defendant Larry Hayden prepared an Individual Safety and Service Plan ("ISSP") for A.E. and his birth parents. Dkt. 54, at 2. On November 29, 2004, DSHS filed a motion in the dependency action to reduce Plaintiff's visitation with A.E. Dkt. 54, at 2. Defendant Hayden signed a declaration in support of the motion stating that the visitation

schedule in place at the time was having an adverse affect on A.E. Dkt. 54, at 6. Defendant Hayden also stated that Plaintiff had been involved in several angry outbursts that had caused visitation problems. *Id*, at 2. Defendant Hayden filed an Initial Report for Modification of Contact and Visitation. Dkt. 54, at 13. In that report Defendant Hayden related two incidents reported to the department concerning Plaintiff's angry outbursts. *Id.* One involved A.E.'s foster parents, and the other was an incident where Plaintiff brought A.E. to court while trying to get a restraining order against Ms. Baker. *Id*, at 13-14. Defendant Hayden reported that Heathy Families, an organization that had been providing visitation services to A.E., called with concerns about A.E.'s ability to tolerate his current schedule, which required him to be transported several times a day. *Id.* Defendant Hayden reported that Plaintiff was attending anger management classes, but had not taken approved parenting classes or taken his random UAs. *Id.* Defendant Hayden filed a Late Addendum Report on December 2, 2004. *Id*., at 18. The Late Addendum Report was also signed by Defendant Kremkau. *Id*., at 19. In that report, Defendant Hayden related another incident involving Plaintiff's "volatile" behavior and Healthy Families staff's concerns for their safety, and A.E.'s safety. *Id*., at 18-19.

The motion to reduce visitation was denied at the December 3, 2004 contested Dependency Review Hearing. Dkt. 54, at 2. The Court did find that neither birth parent had attained sufficient stability to allow for the return of A.E. *Id*. The Court found that Plaintiff had complied with the Court's order by attending anger management classes, but had failed to attend approved parenting classes or get random UAs. *Id*. The Court ordered DSHS to explore an in-home breathalyser monitoring program ("VICAP") as a possibility to place A.E. with Ms. Ramsey. *Id.*

On December 3, 2004, Healthy Families, an organization that had been providing visitation services to Plaintiff, advised DSHS that it would no longer provide services to him due to his temper and his threatening their staff. Dkt. 55, at 6.

On December 16, 2004, the Superior Court ordered A.E. be placed with his mother in a VICAP home monitoring program. Dkt. 55, at 3. Plaintiff was to have supervised visitation with

A.E. *Id*.

On December 23, 2004, Plaintiff filed a pleading moving the Superior Court to order DSHS to show cause why contempt sanctions should not be assessed based upon a missed scheduled visit that they were to arrange. Dkt. 55, at 3. Defendant Hayden was later found in contempt of court and DSHS paid $400.00. *Id*.

On December 25, 2004, police officer Bill Lowman arrived at Ms. Ramsey's home. Dkt. 56, at 2. Ms. Ramsey was intoxicated. *Id*. The officer placed Ms. Ramsey into custody and took protective custody of A.E. *Id*. After consulting with the DSHS on-duty intake worker, he placed A.E. with Plaintiff's sister, Ms. Baker. *Id*.

On December 27, 2004, DSHS recommended that Plaintiff Edmiston receive custody of A.E. Dkt. 55, at 3. On December 28, 2004, A.E. was placed with his father, under the condition that Plaintiff participate in anger management classes, parenting classes, and get random UAs. Dkt. 55, at 7. Plaintiff states that when he received A.E. from Ms. Baker, A.E. had pneumonia, and had been scratched and bitten by a dog. Dkt. 90, at 2-3.

During the period of the end of December 2004 to August 18, 2005, social services were provided to A.E., Plaintiff, and Ms. Ramsey. Dkt. 52, at 2. Those services included supervised visits for Ms. Ramsey and social worker contact with Plaintiff and A.E. *Id*. From early April to August 18, 2005, the assigned CPS social worker was Michael Aldrich. *Id*. Mr. Aldrich is not a named defendant.

After A.E. was placed with his father, several additional court proceedings were held, including Dependency Review Hearings. Dkt. 52, at 2. The Dependency was dismissed on August 18, 2005. *Id*.

At the time of the August 18, 2005 dismissal, Mr. Edmiston had completed a psychological and parenting evaluation, was cooperating with random urine analyses ("UA") two times a week and had been seeing a mental health counselor. Dkt. 52, at 2. He was not in full compliance with the Court's order, however, as he had only partial attendance in anger management classes and parenting classes. *Id.*

As a result of the foregoing events, Mr. Edmiston filed this suit on behalf of himself and A.E. Dkt. 3. On July 27, 2007, the matter was removed from Clallam County, Washington Superior Court. Dkt. 1. According to the Complaint, as a result of Defendants' actions, A.E. suffered emotional and physical harm. Dkt. 3, at 7. Plaintiffs make the following claims: 1) violation of Plaintiffs' Substantive Due Process rights, 2) violation of RCW 26.44.010, 3) violation of civil rights pursuant to 28 U.S.C. § 1983, 4) negligent infliction of emotional distress, 5) negligent investigation, 6) alienation of child's affections, and 7) assault. *Id.* at 7-10.

Currently pending before the Court are Defendants' Motion for Partial Summary Judgment, which addresses Plaintiffs' state law negligent investigation and multiple placement claims, (Dkt. 51), Defendants' Motion to Strike, which attacks pleadings Plaintiff filed in Response to the first Motion for Partial Summary Judgment (Dkt. 84), and Defendants' Second Motion for Partial Summary Judgment, which addresses Plaintiffs' federal claims (Dkt. 68). For the reasons set forth below, Defendants Second Motion for Partial Summary Judgment should be granted and Plaintiffs' federal constitutional claims, brought pursuant to 42 U.S.C. § 1983 should be dismissed. Defendants' Motion for Partial Summary Judgment (Dkt. 51) and Defendants' Motion to Strike (Dkt. 84) should be renoted to be considered with Defendants' Third Motion for Partial Summary Judgment (Dkt. 91), which also addresses state law claims.

## II. DISCUSSION

### A. SUMMARY JUDGMENT

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."); *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, non specific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

## B. FEDERAL CONSTITUTION CLAIMS

Plaintiffs assert that two different substantive due process interests were implicated by Defendants' actions: Plaintiffs' right to family unity and A.E.'s right to be free from multiple placements. Dkt. 88. Defendants assert that they are entitled to qualified immunity for the all of their decisions, and, that they have absolute immunity from liability for the decision to institute dependency proceedings. This opinion will first consider whether Defendants have qualified immunity and then turn to the question of absolute immunity.

### 1. *Qualified Immunity*

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*,

457 U.S. 800, 818 (1982). "Through application of the qualified immunity doctrine, public servants avoid the general costs of subjecting official to the costs of trial - distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service." *V-1 Oil Co. v. Smith*, 114 F.3d 854, 857 (9th Cir. 1997)(*internal citations omitted*). The immunity is "immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

"The Supreme Court has established a two-part analysis for determining whether qualified immunity is appropriate in a suit against an officer for an alleged violation of a constitutional right." *Boyd v. Benton County*, 374 F.3d 773, 778 (9th Cir. 2004), *citing Saucier v. Katz*, 533 U.S. 194, 201 (2001). A court required to rule upon qualified immunity must examine: (1) whether the officials violated the plaintiff's constitutional rights on the facts alleged and (2) if there was a violation, whether the constitution rights were clearly established. *Id.* (*internal citations omitted*).

        a.    *Violation of the Constitutional Right to Family Unity by Defendants Martin, Kremkau, and Hayden*

        I.    <u>First *Saucier* Inquiry</u>

The Substantive Due Process Clause of the Fourteenth Amendment to the U.S. Constitution protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children. *Troxel v. Grandville,* 530 U.S. 57, 64 (2000). "While a constitutional liberty interest in the maintenance of the familial relationship exists, this right is not absolute." *Woodrum v. Woodward County,* 866 F.2d 1121, 1125 (9th Cir 1989). The interest of the parents must be balanced against the interests of the state in protecting the child. *Id.*

In Response to the Defendants' Summary Judgment on Plaintiff's § 1983 claims, Plaintiff complains about the June 2004 case committee recommendation, given to the Superior Court, to place A.E. with his mother at Genesis House as an action which violated their constitutional right to family unity. Dkt. 88, at 11. Plaintiffs note that Defendants Martin and Kremkau were present. *Id.* They argue that the parties knew the placement was destined to fail, and resulted in A.E.

being sent to a foster home. *Id*.

Plaintiffs point to Defendant Hayden's, (which the record shows was joined by Defendant Kremkau), November 2004 recommendation that visitation be reduced between father and son as an action Plaintiffs claim further violated their right to family unity. Dkt. 88, at 11. Plaintiff also points to Defendant Hayden's recommendation that A.E. be placed with Ms. Ramsey in December, after she failed her court-ordered in-patient treatment, and even though he knew from prior experiences with her she was unable to remain sober. Dkt. 88, at 11.

Plaintiffs have failed to show that the case committee recommendation raises to the level of a violation of their constitutional right to family unity. It is undisputed that Mr. Edmiston and his attorney waived their presence at this court ordered conference in June of 2004. Moreover, Mr. Edmiston does not dispute that his UA tests were positive for THC twice during the month of June, nor is there any evidence that he was complying with certain other of the Clallam County Superior Court's requirements. At the time, charges were pending against Mr. Edmiston for violating the order protecting A.E.'s mother from him. In balancing the State's interest in protecting A.E. and the Plaintiffs' interest in family unity, no constitutional violation occurred when the case committee recommended A.E. be placed with his mother at Genesis House. Plaintiff has made no showing that Defendants Martin and Kremkau personally participated in any other decision. To the extent that Plaintiffs base their claim of violation of their right to family unity on this action of Defendants Martin and Kremkau, the claim should be dismissed.

Plaintiffs have not shown that a constitutional violation occurred when Defendants Hayden and Kremkau recommended in November 2004 that the Superior Court reduce Mr. Edmiston's visitation with A.E. The record indicates that the Court did not follow the recommendation. To the extent that Plaintiffs base their claim of violation of their right to family unity on this action of Defendants Hayden and Kremkau, the claim should be dismissed.

Even though there is no showing of a constitutional violation here, Defendants concede that Plaintiffs' right to family unity was eventually implicated. Dkt. 68, at 18. Accordingly,

ORDER
Page 11

examination of the second *Saucier* step is appropriate.

                      ii.        <u>Second *Saucier* Inquiry: Clearly Established Right</u>

In analyzing the second part of the *Saucier* test, the issue is "whether the plaintiff's constitutional right was clearly established at the time of the injury." *Boyd* at 780. "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 780-781. "In other words, an official who makes a reasonable mistake as to what the law requires under a given set of circumstances is entitled to the immunity defense." *Id.*

Social workers' discretionary decisions and recommendations that are not functionally similar to prosecutorial or judicial decisions are entitled to qualified immunity. *Miller* at 898. "Examples of such functions may include decisions and recommendations as to the particular home where a child is to go or as to the particular foster parents who are to provide care." *Id.*

Even assuming that Plaintiffs' constitutional right to family unity was implicated here, Plaintiffs have failed to show that the rights were "clearly established." Defendant Hayden and Defendant Kremkau, the only named Defendants who Plaintiffs specifically identify as personally participating, were confronted with a difficult situation. A.E.'s father and mother were to have no contact with each other in accord with the protective order. So, in providing statutorily required family reunification services, Defendant Hayden and Defendant Kremkau had to ensure that the two parents were kept apart. This necessitated choosing one parent over the other at any one time in their recommendations for placement. The evidence, viewed in a light most favorable to Plaintiffs, indicates that Defendants Hayden and Kremkau were aware of complaints of Mr. Edmiston's threatening and angry behavior (despite taking anger management classes) and that he had not participated in court ordered DSHS approved parenting classes. They were aware of Mr. Edmiston's substance abuse as recently as June of 2004 and of Mr. Edmiston's criminal record regarding the violation of several no contact orders and other offences. On the other hand, Defendants Hayden and Kremkau knew that Ms. Ramsey was a severe alcoholic, and had already

1  lost custody of a child due to her alcoholism. Defendant Hayden's November 2004
2  recommendation included installation of the VICAP system in order to monitor Ms. Ramsey's
3  sobriety while A.E. was in her care. They were aware that she was enrolled in an out-patient
4  substance abuse program. Given these difficult circumstances, the Court cannot say that Mr.
5  Edmiston and A.E.'s constitutional right to family unity was sufficiently clear such that a
6  reasonable official would understand that Defendants Hayden and Kremkau's recommendation
7  that A.E. be placed with his mother violated that right. *See Boyd* at 780. Accordingly,
8  Defendants Hayden and Kremkau have shown that they are entitled to qualified immunity as to
9  Plaintiffs' claims that they violated their right to family unity.

                iii.      Conclusion on Claim that Plaintiffs' Rights to Family Unity were Violated

12  Plaintiffs have failed to show that Defendants Martin, Kremkau and Hayden violated their
13  substantive due process right to family unity. To the extent that it could be argued that Plaintiffs'
14  rights were violated, the Defendants have shown that they are entitled to qualified immunity.
15  Plaintiffs' family unity claim, brought pursuant to 42 U.S.C. § 1983, should be dismissed with
16  prejudice.

           b.    *Violation of A.E.'s Constitutional Right to be Free From Multiple Placements by Defendants Martin, Kremkau, and Hayden*

                I.      First *Saucier* Inquiry: Violation of Right

20  Plaintiffs point to no Ninth Circuit precedent indicating that foster children have a
21  substantive due process liberty interest in being free from multiple placements. Plaintiffs cite a
22  Washington State Supreme Court case which after reviewing holdings from the 2nd, 7th, and 10th
23  Circuits, held that "foster children have a constitutional substantive due process right to be free
24  from unreasonable risks of harm and a right to reasonable safety." *Braam v. State*, 150 Wn.2d
25  689, 700 (2003). Plaintiffs there were a class of foster children including "[a]ll children who are
26  now (or who in the future will be) in the custody of the [DSHS] foster care system and who while
27  in DSHS custody are placed by the Defendants in three or more placements." *Id.* The *Braam*

Court noted found that multiple placements have the potential of being harmful to children, and that, "[t]o be reasonably safe, the State, as custodian and caretaker of foster children must provide conditions free of unreasonable risk of danger, harm, or pain, and must include adequate services to meet the basic needs of the child." *Id.* For the purposes of this motion only, the Court will assume that foster children have "a constitutional substantive due process right to be free from unreasonable risks of harm and a right to reasonable safety."

Plaintiffs are quick to point out that A.E. was in six different homes in six months. Dkt. 88. Plaintiffs allege that this violated A.E.'s substantive due process right to be free from harm and multiple placements. *Id*. A review of each of the placement decisions establishes that A.E.'s constitutional rights were not violated.

The record indicates that A.E. went to a receiving home (a home that provides temporary emergency care) on the day Mr. Edmiston was arrested. A.E.'s mother had an outstanding warrant for her arrest, Mr. Edmiston had been awarded temporary custody but was jailed, and Mr. Edmiston refused to allow his sister, Sue Baker, to care for A.E. Plaintiffs do not allege that any of the named Defendants personally participated in the receiving home decision, nor do they make any allegations that this decision violated A.E.'s constitutional rights.

Due to the temporary nature of the receiving home, A.E. then went into a foster home until September of 2004. Plaintiffs do not allege that any of the named Defendants personally participated in the foster home placement decision, nor do they make any allegations that this decision violated A.E.'s constitutional rights.

Upon recommendation of the June 2004 case committee, which included Defendants Martin and Kremkau, the Superior Court ordered A.E. to join his mother at Genesis House. Plaintiffs have not shown that this recommendation violated A.E.'s rights to be free from harm and multiple placements. As discussed above, Mr. Edmiston did not attend the conference, had recently tested positive for drug use, and had charges pending against him for violation of a no contact order. In contrast, placing A.E. with his mother at the in-patient rehabilitation center,

where her behavior could be closely monitored was not a decision that a would expose A.E. to an "unreasonable risk of danger, harm, or pain."

After his mother left Genesis House in October, A.E. was sent to a different foster home. Plaintiffs do not allege that any of the named Defendants participated in this decision, and even if they had, no showing was made that this decision was not proper under the circumstances.

Based on the situation reviewed above, Defendant Hayden, joined by Defendant Kremkau, made a November 2004 recommendation to the Court that placement with A.E.'s mother in December was appropriate, so long as the VICAP system was in place to monitor her sobriety. Plaintiffs have not shown that this decision violated A.E.'s rights to be free from an "unreasonable risk of danger, harm, or pain." Defendants Hayden and Kremkau knew that Ms. Ramsey was actively participating in treatment for her alcohol abuse and installed the VICAP system for A.E.'s protection. They knew that she was cooperating with them in an effort to regain custody of her son. Plaintiffs have failed to show that A.E.'s rights were violated.

A.E.'s mother was found to be drinking on Christmas day, and so an emergency placement was made with a relative. Although Plaintiffs allege that A.E. was sick and looked like he'd been scratched and bitten by a dog, they point to no evidence in the record that any of the named Defendants participated in this relative placement or that the placement, under the circumstances, was inappropriate. The record indicates that A.E. was then placed with his father.

Plaintiffs have not shown that in the circumstances A.E.'s right to be free from multiple placements (to the extent that he has such a right) was violated under the circumstances here. Placement decisions were made either by Court order, or on an emergency basis. The evidence in the record shows that the various named Defendants were attempting to fulfill their statutory obligations to reunify A.E. (who was an infant) with his parents, while protecting A.E.'s safety. To the extent that it could be argued that his rights were violated, however, examination of the second *Saucier* step is appropriate.

    ii.  Second *Saucier* Inquiry: Clearly Established Right

In any event, no showing has been made that A.E.'s "constitutional right was clearly established at the time of the injury." *Boyd* at 780. That is, examining each placement decision involving a named Defendant in turn, a reasonable official would not understand that what he is doing violates that right. *Id.* at 780-781.

In reviewing the June 2004 case committee recommendations, there is no evidence in the record that Defendants Martin and Kremkau's behavior fell below the standard of what a reasonable social worker, confronted with the facts at the time, would have done in their position. Accordingly, they are entitled to qualified immunity on A.E.'s claim that his constitutional rights were violated.

Moreover, an insufficient showing has been made that a reasonable official in Defendants Hayden and Kremkau's position would have known that recommending placing A.E. with his mother in December would violate his rights. The circumstances were such that a reasonable official would not understand that what he was doing violated A.E.'s rights.

All the named Defendants are entitled to qualified immunity on A.E.'s claim that his right to be free from multiple placements was violated. To the extent that it could be argued such a right was violated, the right was not "clearly established," because its contours were not "sufficiently clear" such that reasonable social workers would understand that, in these circumstances, moving A.E., at each juncture, would violate his rights. *Boyd* at 780-781.

                    iii.    <u>Conclusion on Claim that A.E.'s Right to be Free from Multiple Placements was Violated</u>

Each of the named Defendants are entitled to qualified immunity on A.E.'s substantive due process right to be free from harm and multiple placements claim. To the extent that Plaintiffs' due process claims are based upon A.E.'s right to be free from harm and multiple placements, this claim should be dismissed with prejudice. This opinion will now turn to Defendants assertion that they are entitled to absolute immunity for instituting the dependency proceedings.

        2.    *<u>Absolute Immunity for Instituting Dependency Proceedings</u>*

The critical decision to institute proceedings to make a child a ward of the state is functionally similar to the prosecutorial institution of a criminal proceeding, and is therefore entitled to absolute immunity. *Miller v. Gammie* 335 F.3d 889, 898 (9th Cir. 2003). Social workers "are not entitled to absolute immunity from claims that they fabricated evidence during an investigation or made false statements in a dependency petition affidavit that they signed under penalty of perjury, because such actions aren't similar to discretionary decisions about whether to prosecute." *Beltran v. Santa Clara County,* 514 F.3d 906, 908 (9th Cir. 2008).

To the extent that Plaintiff bases his constitutional claims against the individual social workers here on their decision to institute dependency proceedings, his claim should be dismissed with prejudice. He has failed to point to any evidence in the record that any of them personally participated in the decision. *See King v. Atiyeh,* 814 F.2d 565 (9th Cir. 1987); *Jackson v. City of Bremerton*, 268 F.3d 646, 653 (9th Cir. 2001) (a supervisor may only be held liable under § 1983 if he or she was personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation). He has failed to point to any evidence in the record that any of the social workers "fabricated evidence during an investigation or made false statements in a dependency petition affidavit." *See Beltran* at 908. Accordingly, to the extent that Plaintiff bases his constitutional claims against the individual social workers on the decision to file the dependency action, they should be dismissed with prejudice.

        *3.*    <u>*Conclusion on Federal Claims*</u>

Plaintiffs' have failed to carry their burden under Fed. R. Civ. P. 56 on their claims that their due process rights (brought pursuant to 42 U.S.C § 1983) were violated. Defendants have shown either that Plaintiffs' rights were not violated, or even if they were, Defendants are immune from suit. Plaintiffs' due process and 42 U.S.C § 1983 claims should be dismissed with prejudice.

**C.**    **MOTIONS ON STATE LAW CLAIMS**

The Defendants' Motion for Partial Summary Judgment (Dkt. 51) and Motion to Strike (Dkt. 84) deal with state law claims and pleadings Plaintiffs submitted in support of their opposition to the Motion for Partial Summary Judgment. Defendants have also filed a Third Motion for Partial Summary Judgment which is noted for consideration for July 18, 2008. Dkt. 91. Defendants Motion for Partial Summary Judgment (Dkt. 51) and Motion to Strike (Dkt. 84) should be renoted for consideration on July 18, 2008 so that all state law claims may be considered together.

This matter was removed from state court pursuant to 28 U.S.C. § 1331 and 1343 because there were federal questions involved. Dkt . 1, at 2. The federal claims have now been dismissed. Pursuant to 28 U.S.C. § 1367(c), district courts may decline to exercise supplemental jurisdiction over a state law claims if (1) the claims raise novel or complex issues of state law, (2) the state claims substantially predominate over the claim which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. "While discretion to decline to exercise supplemental jurisdiction over state law claims is triggered by the presence of one of the conditions in § 1367(c), it is informed by the values of economy, convenience, fairness, and comity." *Acri v. Varian Associates, Inc*., 114 F.3d 999, 1001 (9th Cir. 1997)(*internal citations omitted*). Although "it is generally within a district court's discretion either to retain jurisdiction to adjudicate the pendent state claims or to remand them to state court," *Harrell v. 20th Ins. Co.,* 934 F.2d 203, 205 (9th Cir. 1991) in the interest of fairness, the parties should be given an opportunity to be heard on whether the case should be remanded. Parties should be ordered to show cause why this Court should not decline to exercise supplemental jurisdiction and why this matter should not be remanded to Clallam County, Washington Superior Court, if any they have. Briefs, if any, should be no longer than 8 pages in length and should be filed no later than July 18, 2008.

### III.  ORDER

Therefore, it is hereby, **ORDERED** that:

- Defendants' Second Motion for Partial Summary Judgment (Dkt. 68) is **GRANTED**; Plaintiffs' constitutional claims, brought pursuant to 42 U.S.C. § 1983 are **DISMISSED WITH PREJUDICE**;

- Defendants' Motion for Partial Summary Judgment (Dkt. 51) is **RENOTED** for July 18, 2008;

- Defendants' Motion to Strike (Dkt. 84) is **RENOTED** for July 18, 2008;

- Parties are **ORDERED** to **SHOW CAUSE WHY THIS COURT SHOULD NOT DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION AND THIS MATTER SHOULD NOT BE REMANDED TO CLALLAM COUNTY, WASHINGTON SUPERIOR COURT**, if any they have. Briefs should be no longer than 8 pages in length and filed no later than July 18, 2008.

- The Clerk of the Court is instructed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

DATED this 7th day of July, 2008.

_____
ROBERT J. BRYAN
United States District Judge